UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


Carl L. Carter, Jr.

v.                                    Civil No. 17-cv-52-LM

Celia Englander; Judy Baker;
Ryan Landry; Michael Beaton;
Joey Pelletier; Paul Fortier;
Helen Duchesne; Shanon Berwick;
Scott Lambertson; Michelle Edmark,
Warden, Northern New Hampshire
Correctional Facility; Jessica
Pelletier; Tina Pageau; Marvin
Kendall; Jeffrey Fetter; Corina
Neculai; Misty Gagne; and Donna
Edwards


## REPORT AND RECOMMENDATION

Through the vehicle of 42 U.S.C. § 1983, pro se plaintiff
Carl Carter, a former inmate of the New Hampshire State Prison
("NHSP"), has sued 13 employees of the New Hampshire Department
of Corrections ("State defendants")[1] and three contracted medical
professionals. He asserts claims under the First and Eighth
Amendments to the United States Constitution. Before this
magistrate judge for a report and recommendation are two motions
to dismiss, one filed by the State defendants (Doc. No. 19), the

---

[1] In the acceptance of service filed by the State
defendants, their counsel declined to accept service on behalf
of Donna Edwards, based upon information and belief that she has
died. See Doc. No. 8.

second filed by the other three defendants (Doc. No. 20).
Between them, the two motions seek the dismissal of most but not
all of plaintiff's claims.  Plaintiff objects.  For the reasons
and to the extent described below, defendants' motions to
dismiss should be granted in part and denied in part.

### The Legal Standard

To survive a motion to dismiss for failure to state a claim
upon which relief can be granted, see Fed. R. Civ. P. 12(b)(6),
a complaint "must contain sufficient factual matter to state a
claim to relief that is plausible on its face." Keach v.
Wheeling & Lake Erie Ry. Co. (In re Montreal, Me. & Atl. Ry.,
Ltd.), 888 F.3d 1, 6 (1st Cir. 2018) (citations, internal
quotation marks and ellipsis omitted).  When assessing a
complaint, the court must "accept the complaint's well-pleaded
facts as true and 'draw all reasonable inferences therefrom in
the pleader's favor.'"  Id. (quoting González v. Vélez, 864 F.3d
45, 50 (1st Cir. 2017)).

### Background

Unless otherwise indicated, the facts in this section are
drawn from plaintiff's amended complaint, Document No. 12.

Carter entered the NHSP in Concord in October of 2013.  He
remained in the custody of the New Hampshire Department of
Corrections ("DOC") for the next 34 months, and he was housed in

2

both the NHSP in Concord and the DOC's Northern Correctional Facility ("NCF") in Berlin.  In August of 2016, Carter was released from the NHSP to home confinement.

Several days after he entered the NHSP, Carter fell down a flight of stairs and sustained several injuries including two hernias in his abdomen.  He spent three days in the prison hospital where Dr. Celia Englander told him that the DOC did not fix hernias.  Instead of surgery, she prescribed 600 milligrams of ibuprofen, to be taken three times a day.  Nurse Practitioner ("N.P.") Judy Baker continued that treatment regimen while Carter was housed in the NCF.  Ultimately, the high dose of ibuprofen that Carter was given caused internal bleeding that had to be surgically corrected shortly after he was released to home confinement.  In September of 2017, Carter had his hernias surgically repaired.

In January of 2015, while Carter was housed in the NCF, a foreign object became lodged in his left eye.  He complained about his injury to N.P. Baker, Nurse Jessica Pelletier, Nurse Tina Pageau, Dr. Marvin Kendal, Dr. Jeffrey Fetter, Nurse Misty Gagne, N.P. Corina Neculai, and Nurse Donna Edwards.  None of those medical professionals examined his eye, and they prescribed only eye drops.  In March of 2016, Carter was finally given an appointment with an eye surgeon who removed the foreign object.  But because 14 months had passed since the object

3

became lodged in Carter's eye, tissue had grown over it. Therefore, the surgeon had to cut into Carter's eye to removal the object, and had to use stitches to repair the incision. As a result of his delayed treatment, Carter has suffered permanent damage to his left eye.

When Carter entered the NHSP, he had diabetes. He was treating that condition with medication, and his A1C level was 6.4, which falls into the healthy range, which is 7 and below.[2] Dr. Englander and N.P. Baker refused to prescribe the medication that Carter was taking before his incarceration, but prescribed something different. They did, however, monitor Carter's A1C level, and saw it rise from 6.4 to between 10 and 11.5, a range that is considered dangerous. Even so, they did not change their prescription regimen. Carter now suffers from diabetic neuropathy in his hands and feet.

In June of 2015, Cpl. Michael Beaton censored, confiscated, and destroyed a letter that Carter had attempted to send to his brother. In his amended complaint, Carter alleges that Helen Duchesne participated in destroying the letter. In his

---

[2] "The hemoglobin A1c test determines the percentage of red blood cells that are glycated, or covered with sugar. The test reflects that average blood sugar level for the preceding two or three months." McGraw v. Berryhill, No. 17-cv-3165, 2018 WL 3130938, at *2 n.2 (C.D. Ill. June 26, 2018) (quoting "A1c test" available at www.mayoclinic.org/tests-procedures/a1c-test/about/pac-20384643, viewed Mar. 20, 2018).

objection to the State defendants' motion to dismiss, Carter
says that Duchesne's participation in destroying the letter
consisted of notifying him that after the letter had been
confiscated by Cpl. Beaton, it was lost.  After the June 2015
letter was confiscated, none of the letters Carter sent to his
brother reached their destination, and he received no further
letters from his brother.  Carter used the DOC grievance process
to complain about the confiscation of the June 2015 letter, to
no avail.

In addition to confiscating Carter's June 2015 letter, Cpl.
Beaton wrote a disciplinary report charging Carter with
insubordination because the letter referred to an unnamed
"scumbag censor."  Officer Paul Fortier prosecuted the
disciplinary charge, found Carter guilty, and imposed a
punishment.  At various stages in the appeal process, Officer
Fortier's decision was upheld by Sgt. Joey Pelletier, Lt. Shanon
Berwick, Capt. Scott Lambertson, and Warden Michelle Edmark.

Based upon the foregoing, Carter has sued in five counts,
four of which are subject to the pending motions to dismiss.
Specifically, plaintiff asserts claims that: (1) various
defendants violated his Eighth Amendment right to be free from
cruel and unusual punishment by showing deliberate indifference
to a serious medical condition during the treatment of his
hernias (Count One), his eye injury (Count Two), and his

diabetes (Count Three); and (2) seven defendants violated his First Amendment right to free speech by intercepting letters to and from his brother and by subjecting him to prison discipline for the content of the June 2015 letter.[3]  Carter filed his initial complaint in this case on February 27, 2017.

## Discussion

1. Count One

Count One is an Eighth Amendment deliberate-indifference claim against Englander and Baker in which plaintiff seeks both damages and a declaratory judgment.  Those claims arise from defendants' failure to have his hernias surgically repaired (hernia claim) and their decision to treat his hernias with a high dose of ibuprofen (ibuprofen claim).  Both defendants argue that Carter's hernia claim should be dismissed because it is time barred.  Baker argues that as to her, both the hernia claim and the ibuprofen claim should be dismissed on Rule 12(b)(6) grounds, while Englander makes a Rule 12(b)(6) argument that is limited to plaintiff's ibuprofen claim.  Finally, both Baker and Englander argue that because Carter has been released from the NHSP to home confinement, he no longer has standing to pursue

---

[3] Count Five asserts another Eighth Amendment deliberate-indifference claim based upon the treatment Carter received for Hepatitis C, but neither of the two pending motions seeks the dismissal of Count Five.

declaratory relief concerning the treatment he received while he was incarcerated.  The court considers each argument in turn.

### A. Statute of Limitations

According to defendants, Carter's hernia claim accrued no later than October 9, 2013, when Englander made her initial decision not to order surgery, and is time barred because it was filed more than three years later.  The court does not agree.

"Because section 1983 does not have its own statute of limitations . . . courts use the personal-injury limitations period adopted by the state where the injury supposedly occurred." Martínez-Rivera v. Puerto Rico, 812 F.3d 69, 74 (1st Cir. 2016).  In New Hampshire, the applicable limitations period is three years.  See N.H. Rev. Stat. Ann. § 508:4, I.  However, while federal courts draw the limitations period for § 1983 actions from state law, they "use federal law . . . to figure out when the limitation clock starts ticking." Martínez-Rivera, 812 F.3d at 74.

One piece of relevant federal law is "[t]he continuing violation doctrine [which] allows the accrual date in certain § 1983 actions to be delayed until a series of wrongful acts blossoms into an injury on which suit can be brought." Kelly v. Dowaliby, No. 13-cv-107-LM, 2014 WL 2605478, at *2 (D.N.H. June 10, 2014) (quoting Perez-Sanchez v. Pub. Bldg. Auth., 531 F.3d 104, 107 (1st Cir. 2008)) (internal quotation marks omitted).

Under the circumstances of this case,

> the continuing violation doctrine can apply when a
> prisoner challenges a series of acts that together
> comprise an Eighth Amendment claim of deliberate
> indifference to serious medical needs . . . .  To
> assert a continuing violation for statute of
> limitations purposes, the plaintiff must "allege both
> the existence of an ongoing policy of [deliberate
> indifference to his or her serious medical needs] and
> some non-time-barred acts taken in the furtherance of
> that policy."  This test screens out Eighth Amendment
> claims that challenge discrete acts of
> unconstitutional conduct or that fail to allege acts
> within the relevant statutory period that are
> traceable to a policy of deliberate indifference.

Kelly, 2014 WL 2605478, at *2 (quoting Shomo v. City of N.Y., 579 F.3d 176, 182 (2d Cir. 2009).

Here, Englander argues that her alleged statement, in October of 2013, that the DOC does not fix hernias is a discrete act that falls outside the limitations period.  However, the court may reasonably infer from the allegations in plaintiff's complaint that he complained about his hernias and was treated for them throughout his entire incarceration and that Dr. Englander and N.P. Baker refused to order hernia surgery for Carter right up until he was released to home detention in August of 2016.  Thus, he has adequately alleged a continuing violation that included acts that took place within the limitations period and an ongoing policy of deliberate indifference.  Accordingly, plaintiff's hernia claim should not be dismissed as time barred.  See Heard v. Sheahan, 253 F.3d

316, 318 (7th Cir. 2001) (explaining that allegedly unconstitutional failure to treat hernia continued until plaintiff left jail, and holding that Eighth Amendment claim accrued upon his release).

### B. Failure to State a Claim

The court begins by outlining the applicable substantive law and then turns to defendants' arguments that Count One does not state a claim upon which relief can be granted.

#### 1. The Law of Deliberate Indifference

"Government officials violate the Eighth Amendment if they display 'deliberate indifference' to a prisoner's 'serious medical needs.'" Miranda-Rivera v. Toledo-Dávila, 813 F.3d 64, 74 (1st Cir. 2016) (quoting Gaudreault v. Muni. of Salem, 923 F.2d 203, 208 (1st Cir. 1990)). "[T]o prove an Eighth Amendment violation, a prisoner must satisfy both of two prongs: (1) an objective prong that requires proof of a serious medical need, and (2) a subjective prong that mandates a showing of prison administrators' deliberate indifference to that need." Kosilek v. Spencer, 774 F.3d 63, 82 (1st Cir. 2014) (citing Estelle v. Gamble, 429 U.S. 97, 106 (1976); Sires v. Berman, 834 F.2d 9, 12 (1st Cir. 1987)). "A 'serious medical need' 'is one that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" Miranda-Rivera, 813

9

F.3d at 74 (quoting Gaudreault, 923 F.2d at 208).  "Deliberate indifference requires (1) that 'the official . . . be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists,' and (2) that he draw that inference."  Id. (quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994)).

### 2. Baker

Baker argues that Carter has failed allege sufficient facts to state an Eighth Amendment claim against her based upon the treatment he received for his hernias.  Specifically, she argues that that Carter's complaint alleges that Englander made the decision to treat his hernias with ibuprofen rather than surgery and that Englander made the decision about Carter's dosage of ibuprofen.  In Baker's view, Carter has failed to state an Eighth Amendment claim against her because he has alleged no decision on her part about the care he received for his hernias.  But, Carter has alleged that while he was housed at the NCF, he received medical care from Baker, and it may reasonably be inferred from his complaint that he complained to Baker about his hernias.  Baker may be able to demonstrate, at summary judgment, that she had no role in making any decisions about Carter's hernia care, but, notwithstanding Baker's argument to the contrary, Carter's statement that Baker "only continued ineffective prescriptions that originated with Dr. Celia

Englander," Am. Compl. (Doc. No. 12) 2, provides no basis for dismissing Count One as to Baker.  While Baker construes that statement as an allegation that Englander made all the decisions concerning Carter's hernia treatment, that statement could also be construed, equally plausibly, as an allegation that when she was in charge of Carter's treatment, Baker made the same decisions that Englander had made.  Given the court's obligation to draw all reasonable inferences in Carter's favor, see In re Montreal, Me. & Atl. Ry., 888 F.3d at 6, Baker is not entitled to dismissal of Count One on Rule 12(b)(6) grounds.

### 3. Englander

Englander argues that the Count One ibuprofen claim should be dismissed because Carter has failed to allege sufficient facts to establish that her decision to prescribe 600 milligrams of ibuprofen for his hernia pain was faulty enough to violate the Eighth Amendment.  To be sure, the Eighth Amendment "does not require that an inmate receive the best possible treatment 'that money can buy,'" Perry v. Roy, 782 F.3d 73, 78 (1st Cir. 2015) (quoting Kosilek, 774 F.3d at 85; citing United States v. DeCologero, 821 F.2d 39, 42 (1st Cir. 1987)), nor does it "impose upon prison administrators a duty to provide care that is . . . of the prisoner's choosing," Kosilek, 774 F.3d at 82 (citing United States v. Derbes, 369 F.3d 579, 583 (1st Cir. 2004); Ferranti v. Moran, 618 F.2d 888, 891 (1st Cir. 1980)

("allegations [that] simply reflect a disagreement on the
appropriate course of treatment . . . fall[] short of alleging a
constitutional violation")).  Indeed, "the Constitution [only]
proscribes care that is so inadequate as to shock the
conscience." Kosilek, 774 F.3d at 83 (quoting Torraco v.
Maloney, 923 F.2d 231, 235 (1st Cir. 1991); citing Sires v.
Berman, 834 F.2d 9, 12 (1st Cir. 1987)) (internal quotation
marks omitted).

     Here, Carter alleges that Dr. Englander prescribed such a
high dose of ibuprofen that it caused internal bleeding severe
enough to require surgical repair.  Plaintiff may or may not be
able to prove that the decision to prescribe 600 milligrams of
ibuprofen was so ill-advised that it shocks the conscience.  But
given the alleged consequences of that treatment decision, the
court cannot say that the "complaint's factual averments are
'too meager, vague, or conclusory to remove the possibility of
relief from the realm of mere conjecture.'" In re Montreal,
Me. & Atl. Ry., 888 F.3d at 6 (quoting SEC v. Tambone, 597 F.3d
436, 442 (1st Cir. 2010)).  Accordingly, Englander is not
entitled to dismissal of the Count One ibuprofen claim on Rule
12(b)(6) grounds.

          C. Lack of Standing to Pursue Declaratory Relief

     In addition to seeking monetary damages for the claim he
asserts in Count One, Carter also seeks a declaratory judgment

that defendants' treatment of his hernias violated his Eighth
Amendment rights.  Defendants cite persuasive authority for the
proposition that Carter's release from prison has mooted the
requests for declaratory relief that he makes in Count One.  See
Ford v. Bender, 768 F.3d 15, 29 (1st Cir. 2014) ("A prisoner's
challenge to prison conditions or policies is generally rendered
moot by his transfer or release.") (citing Jordan v. Sosa, 654
F.3d 1012, 1027 (10th Cir. 2011); Rendelman v. Rouse, 569 F.3d
182, 186 (4th Cir. 2009); Oliver v. Scott, 276 F.3d 736, 741
(5th Cir. 2002); Scott v. District of Columbia, 139 F.3d 940,
941 (D.C. Cir. 1998); Incumaa v. Ozmint, 507 F.3d 281, 287 (4th
Cir. 2007)).  Based on Ford, Carter's request for a declaratory
judgment on Count One should be dismissed.  Moreover, the
reasoning of Ford applies with equal force to the requests for
declaratory judgments that Carter makes in Counts Two, Three,
Four, and Five.  Consequently, those requests should also be
dismissed.

However, dismissing those requests for relief does not
really deprive Carter of anything.  That is because of the
redundancy of his claims for declaratory relief and his claims
for damages.  When it rules on plaintiff's claims for damages
the court will, necessarily, cover the very same legal and
factual ground it would cover if it were to rule on his claims
for declaratory relief.  Thus, while plaintiff's claims for

declaratory relief should be dismissed, dismissal of those claims will, as a practical matter, deprive him of nothing.

### 2. Count Two

Count Two is an Eighth Amendment deliberate-indifference claim against Baker, Jessica Pelletier, Pageau, Kendall, Fetter, Gagne, Neculai, and Edwards.  The claim is based upon each defendant's failure to examine Carter's eye when he complained about having something in it, and their delay of 14 months in sending him to see an eye surgeon.  Baker, Neculai, Gagne, Pageau, and Pelletier argue that Count Two should be dismissed because Carter does not offer detailed allegations concerning the complaints he made to them about the object in his eye and because they did, in fact, provide him with eye drops.  On that basis, they characterize Count Two as alleging nothing more than a disagreement with their treatment decisions that does not rise to the level of an Eighth Amendment violation.  Kendall and Fetter make the same argument.  The court is not persuaded.

Carter alleges that he complained to each of the Count Two defendants about an object lodged in his eye, that each of them refused to look in his eye, that it took 14 months for one or more of them to send him to an eye surgeon, and that the surgeon found, and removed, the foreign object he had been complaining about.  While plaintiff's allegations could be more specific, he has alleged that each Count Two defendant refused to examine an

eye injury that ultimately required surgery to correct and that might have been corrected with treatment that was less invasive than surgery, had it been properly addressed in a timely fashion.  On that basis, the court cannot say that plaintiff's factual allegations are so threadbare that they do not "state a claim to relief [under the Eighth Amendment] that is plausible on its face." In re Montreal, Me. & Atl. Ry., 888 F.3d at 6 (quoting Privitera v. Curran (In re Curran), 855 F.3d 19, 25 (1st Cir. 2017); citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).  Accordingly, no defendant is entitled to the dismissal of Count Two (except that each is entitled to the dismissal of plaintiff's request for declaratory relief, as explained above).

### 3. Count Three

Count Three is an Eighth Amendment deliberate-indifference claim against Englander and Baker based upon their failure to prescribe Carter the diabetes medication he had been taking before his incarceration.  Both defendants argue that Count Three is time-barred, and Baker argues that Count Three does not state a claim upon which relief can be granted.

As for the statute of limitations, defendants argue that the claim Carter asserts in Count Three accrued upon his admission to the NHSP or very shortly thereafter, i.e., when he was first denied the diabetes medication he says he should have been given.  But, as with the hernia claim plaintiff asserts in

15

Count One, Count Three alleges a violation that continued until the date of Carter's release to home custody, which took place less than three years before he filed this action.  Accordingly, Count Three is not time-barred.

Baker also argues that Count Three does not state a claim upon which relief can be granted.[4]  Specifically, she argues that plaintiff has identified nothing more than a garden-variety disagreement with the course of treatment he was provided, which is insufficient to state an Eighth Amendment claim.  That argument may prevail on summary judgment, but given plaintiff's allegations that Baker was privy to his escalating A1C levels during the course of his incarceration but did not give him the medication that had resulted in substantially lower A1C levels before his incarceration, or even adjust his medication in response to those escalating A1C levels, plaintiff has stated a claim that survives Baker's Rule 12(b)(6) challenge.

In sum, neither defendant is entitled to the dismissal of Count Three (except that each is entitled to the dismissal of plaintiff's request for declaratory relief, as explained above).

### 4. Count Four

Count Four is a First Amendment free-speech claim against Beaton, Duchesne, Fortier, Joey Pelletier, Berwick, Lambertson,

---

[4] Englander, however, relies exclusively upon her argument that Count Three is barred by the statute of limitations.

and Edmark.  That claim is based upon allegations concerning interference with plaintiff's mail, by Beaton and Duchesne, and the punishment he received, from Fortier, Pelletier, Berwick, Lambertson, and Edmark, for the "scumbag censor" comment he made in his June 2015 letter.[5]  Duchesne moves to dismiss Count Four on grounds that plaintiff's complaint does not allege facts that are sufficient to state a First Amendment claim against her, and Pelletier, Berwick, Lambertson, and Edmark move to dismiss Count Four on grounds that their successive affirmances of the disciplinary action that Fortier took against Carter is not conduct that can serve as the basis for a § 1983 claim.

## A. Duchesne

In his amended complaint, plaintiff makes a single allegation concerning Duchesne: "Helen Duchesne, a mailroom officer participated in the destruction of his letter."  Am. Compl. (Doc. No. 12) 5.  After Duchesne pointed out the lack of specific factual allegations in plaintiff's complaint in her motion to dismiss, he elaborated, in his objection:

> The last player in this violation of the Plaintiff's First Amendment rights was mailroom Officer Helen Duchesne.  The plaintiff wrote an Inmate Request Slip to the mailroom asking for the return of his letter to his brother.  Officer Duchesne replied to the

---

[5] Plaintiff originally asserted, but has since withdrawn, a claim that Lambertson and Edmark failed to properly train their subordinates in their obligation to protect the First Amendment rights of inmates.  See Doc. No. 12, at 5; Doc. No. 21, at 9.

> Plaintiff's request telling him that his letter was
> lost.

Doc. No. 21, at 8-9.  In other words, plaintiff now alleges that
Duchesne participated in the destruction of his June 2015 letter
by telling him, after Beaton had confiscated it, that it had
been lost.

Plainly, prisoners enjoy a First Amendment right, but not
an absolute one, to send and receive correspondence.  See
Procunier v. Martinez, 416 U.S. 396, 406-14 (1974), overruled on
other grounds by Thornburgh v. Abbott, 490 U.S. 401 (1989).  But
based upon his clarification of his claim against Duchesne,
plaintiff is not alleging that Duchesne had anything to do with
his letter to his brother until after Beaton had confiscated it.
And the only allegation he makes about Duchesne is that she told
him what had happened to the letter, not that she had actually
done anything with it.  Thus, plaintiff has not alleged that
Duchesne had any role in interfering with his communication with
his brother.  In short, there is a significant gap between the
conduct by Duchesne that plaintiff alleges and the legal theory
on which he relies in Count Four.  Accordingly, as to Duchesne,
Count Four should be dismissed, but without prejudice to
plaintiff's moving to amend his complaint to add a proper First
Amendment claim against Duchesne, if he can.

## B. Pelletier, Berwick, Lambertson, and Edmark

Plaintiff's claim against Pelletier, Berwick, Lambertson, and Edmark (the "affirming defendants") is that each of them "upheld [his] conviction" for insubordination by Fortier.  Am. Compl. (Doc. No. 12) 5.  Plaintiff does not, however, make any allegations concerning the mechanics of the DOC review process. The affirming defendants move to dismiss, arguing that the mere denial of a prisoner grievance is not a constitutional violation, as a matter of law.  In his objection, plaintiff offers no legal argument, but simply restates the fact that each of the affirming defendants did, indeed, uphold Fortier's decision.

While the court of appeals for this circuit does not appear to have addressed this issue, courts across the country have held that "[d]enying a [prisoner's] grievance does not constitute a constitutional violation," Pokras v. Lewis, No. CV17-06603-JVS (GJS), 2018 WL 1901121, at *7 (C.D. Cal. Feb. 14, 2018) (citing Rust v. Garcia, No. ED CV 10-665-PA (VBK), 2013 WL 6199264, at *9 (C.D. Cal. Nov. 26, 2013)), R. & R. adopted by 2018 WL 1896530 (Apr. 19, 2018).[6]  While that authority is

---

[6] See also Moore v. Mich. Dep't of Corr., No. 1:17-cv-615, 2017 WL 3431602, at *7 (W.D. Mich. Aug. 10, 2017) ("For the same reason that a supervisory relationship is insufficient to establish liability for the misconduct of a subordinate, denying a grievance or failing to act based on information contained in a grievance is insufficient to establish § 1983 liability.")

compelling, it is not entirely clear that it applies to the circumstances of this case; plaintiff has alleged that the affirming defendants upheld Fortier's decision, not that they denied a grievance about some aspect of prison life.  While the affirming defendants' argument may entitle them to summary judgment, it does not entitle them to dismissal of Count Four.

### C. Compensatory Damages

Finally, the State defendants ask the court to dismiss Carter's request for compensatory damages for the constitutional violation on which Count Four is based.  That request is premature.  If and when Count Four is tried to a jury, the court will consider the proper form of damages when it crafts its instructions for the jury.

**Conclusion**

For the reasons described above, the State defendants' motion to dismiss (Doc. No. 19) should be granted in part, i.e., to the extent that: (1) all of plaintiff's requests for declaratory relief should be dismissed; and (2) Count Four should be dismissed as to Duchesne, without prejudice.

---

(citing Shehee v. Luttrell, 199 F.3d 295, 300 (6th Cir. 1999)); Smith v. Courtney, No. 3:14cv231/MCR/CJK, 2016 WL 1554137, at *5 (N.D. Fla. Mar. 22, 2016) (same) (citations omitted), R. & R. adopted by 2016 WL 1532246 (Apr. 15, 2016); Esposito v. Landry, No. 2:15-cv-00263-GZS, 2015 WL 9223105, at *4 (D. Me. Nov. 20, 2015) (citing Gallagher v. Shelton, 587 F.3d 1063, 1069 (10th Cir. 2009); Shehee, 199 F.3d at 300), R. & R. aff'd by 2015 WL 9165882 (Dec. 16, 2015).

Similarly, the second motion to dismiss (Doc. No. 20) should also be granted in part, i.e., to the extent that all of plaintiff's requests for declaratory relief should be dismissed. Based upon the foregoing, if the district judge adopts this report and recommendation, plaintiff's case will consist of: (1) the two-part Eighth Amendment claim asserted against Englander and Baker in Count One; (2) the Eighth Amendment claim asserted against Baker, Jessica Pelletier, Pageau, Kendall, Fetter, Gagne, and Neculai in Count Two;[7] (3) the Eighth Amendment claim asserted against Englander and Baker in Count Three; (4) the First Amendment free-speech claim asserted against Beaton, Joey Pelletier, Berwick, Lambertson, and Edmark, and the First Amendment retaliation claim asserted against Fortier, in Count Four; and (5) the Eighth Amendment claim asserted against Baker and Ryan Landry in Count Five.

Any objection to this report and recommendation must be filed within 14 days of receipt of this notice. See Fed. R. Civ. P. 72(b)(2). The 14-day period may be extended upon motion. Failure to file a specific written objection to the report and recommendation within the specified time waives the right to appeal the district court's order. See Santos-Santos

---

[7] As the court has noted, the other Count Two defendant, Donna Edwards, appears to be deceased, and neither she nor her estate have been served.

v. Torres-Centeno, 842 F.3d 163, 168 (1st Cir. 2016); Fed. R.

Civ. P. 72(b)(2).


_____
Andrea K. Johnstone
United States Magistrate Judge


August 22, 2018

cc:   Carl L. Carter, Jr., pro se
      Francis Charles Fredericks, Esq.
      Anthony Gladieri, Esq.
      Jonathan A. Lax, Esq.