```
               UNITED STATES DISTRICT COURT
             FOR THE DISTRICT OF NEW HAMPSHIRE
```

Carl L. Carter, Jr.

    v.                                                    Civil No. 17-cv-052-LM
                                                      Opinion No. 2020 DNH 139

Judy Baker

## O R D E R

Plaintiff Carl L. Carter, Jr., filed this action pro se[1] on February 9, 2017, asserting an Eighth Amendment deliberate indifference claim against defendants Judy Baker, Jessica Pelletier, Tina Pageau, Corina Neculai, and Misty Gagne.[2] Carter's claim arises out of alleged delay in medical treatment he sought from defendants while he was incarcerated. Now before the court is defendants' motion for summary judgment.[3]

---

[1] Carter later retained counsel, and was represented in this action from March 21, 2019, through March 5, 2020. Since March 5, Carter has proceeded without benefit of counsel.

[2] Carter's original complaint asserted five claims against seventeen defendants. With benefit of counsel, Carter withdrew four of his claims and stipulated to dismissal of twelve of the originally named defendants. His remaining claim is a single Eighth Amendment claim pled against all five of the remaining defendants.

[3] Defendants filed their motion for summary judgment on January 31, 2020, while Carter was represented by counsel. Carter's counsel withdrew following a disagreement over whether counsel remained "able to represent . . . Carter. . . consistent with Rule 11 and his ethical responsibilities" after defendants filed their motion. Doc. no. 50.

**STANDARD OF REVIEW**

Summary judgment is proper only if the moving party can demonstrate "that there is no evidence in the record to support a judgment for the nonmoving party." Celotex Corp. v. Catrett, 477 U.S. 318, 332 (1986); see also Fed. R. Civ. P. 56(a). If the moving party succeeds in making that showing, "the burden shifts to the nonmoving party, who must, with respect to each issue on which []he would bear the burden of proof at trial, demonstrate that a trier of fact could reasonably resolve that issue in h[is] favor." Borges ex rel. S.M.B.W. v. Serrano-Isern, 605 F.3d 1, 5 (1st Cir. 2010). The nonmoving party's failure to meet that burden by reference to "significantly probative" materials "of evidentiary quality" entitles the moving party to summary judgment. Flovac, Inc. v. Airvac, Inc., 817 F.3d 849, 853 (1st Cir. 2016) (citations omitted).

In evaluating a motion for summary judgment, the courts must view the evidence in the light most favorable to the nonmoving party, must draw all reasonable inferences in that party's favor, and may neither make credibility determinations nor weigh the evidence. See, e.g., Lytle v. Household Mfg., Inc., 494 U.S. 545, 554-555 (1990); Harris v. Scarcelli, 835 F.3d 24, 29 (1st Cir. 2016). As in other contexts, the courts construe the pleadings of a pro se litigant liberally when

determining the merits of a motion for summary judgment.  See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam).

**UNDISPUTED FACTS**

The following statement of facts is drawn exclusively from Carter's deposition testimony.[4]  Carter's deposition is proffered by defendants and constitutes the only evidence of record.

Carter was incarcerated at the Northern New Hampshire Correctional Facility ("NCF") in Berlin, New Hampshire, from approximately October 2013 through August 2015, and in the New Hampshire State Prison for Men ("NHSP") from approximately August 2015 through August 2016.  Each of the defendants is a nurse employed by the New Hampshire Department of Corrections as medical staff at the NCF.

In February 2014, while Carter was incarcerated at NCF, a foreign object became lodged in his left eye.[5]  Doc. no. 47-2 at 13:1-2, 22:4-9, 32:6.  The object caused him to experience "irritation and discomfort," but not pain.  Id. at 24:17-20, 33:20-24; but cf. id. at 79:20-22 ("the eye was more irritation than it was pain, but there was pain that would happen once in a

---

[4] Carter was deposed on December 9, 2019.  At that time, Carter was represented by counsel.  Carter's counsel was present and defended Carter during the deposition proceeding.

[5] Carter had diabetic retinopathy in his left eye, but not his right, before he was incarcerated at NCF.

while"). Carter concedes that the presence of the object in Carter's eye did not place him at any "risk of serious harm." Id. at 24:17-20.

Carter attempted to dislodge the object himself, and after failing to do so began complaining about its presence to the defendants. Id. at 33:2-7. Although he reported his symptoms to each of the defendants, none of them ever looked in his eye to determine whether a foreign object was visible there. Id. at 33:2-7, 37:4, 38:10-16, 40:14—42:4, 50:16—51:20, 52:27—59:8. Instead, defendant Gagne provided him with eyedrops in the hope of relieving his reported symptoms. The eyedrops proved ineffective.

Carter did not believe that defendants failed to treat his condition because they were trying to make him suffer, but rather because they did not believe his condition was important. Id. at 41:4-23. In addition, Carter concedes the possibility that defendants did not believe that there was in fact an object lodged in his eye, and that they may have believed he was "faking trying to get something." Id. at 59:9-13.

Over the following two years, Carter underwent numerous eye examinations, none of which revealed the presence of a foreign object in his eye. These included annual diabetic eye examinations as well as quarterly head, ear, eyes, nose, and throat examinations. In addition to these regularly scheduled

4

eye examinations, Carter was examined in August 2015 by an outside physician who was unable to detect the object.[6]

On February 10, 2016, after Carter had been transferred to NHSP, an eye specialist attempted without success to remove the object from Carter's eye. On February 22, 2016, Carter underwent an X-ray study in an unsuccessful effort to locate the object. Medical staff at NHSP nevertheless referred Carter to a specialist who, on March 17, 2016, was able to locate and surgically remove the object, which had been lodged under the skin of Carter's eye.

Since the object was removed, Carter occasionally has the sensation that an object is stuck in his eye, and the eye frequently waters and produces tears. However, Carter does not base his Eighth Amendment claim on any lingering consequences of having had the object lodged in his eye, but rather on the quality of and purported delay in the treatment he received while he was incarcerated at NCF.

## DISCUSSION

Carter asserts that defendants are liable under 42 U.S.C. § 1983 for violating his Eighth Amendment right to adequate

---

[6] One of Carter's fellow inmates who had been "a medic during a war" also attempted to look for the object in Carter's eye but was unable to detect it.

medical care while incarcerated.  Section 1983 "creates a remedy for violations of federal rights committed by persons acting under color of state law."  Sanchez v. Pereira-Castillo, 590 F.3d 31, 40 (1st Cir. 2009) (internal quotation marks omitted).  A Section 1983 claim consists of three elements: "deprivation of a right, a causal connection between the actor and the deprivation, and state action."  Id.  On the sole basis of Carter's deposition testimony regarding his underlying medical condition and the treatment he received for it, defendants argue that Carter cannot establish an actionable deprivation of his Eighth Amendment rights.

It is well settled that a public official's "deliberate indifference to a prisoner's serious illness or injury" violates the Eighth Amendment's prohibition against cruel and unusual punishment. Estelle v. Gamble, 429 U.S. 97, 105 (1976).  To establish an Eighth Amendment violation in the medical care context, a prisoner must establish both (i) that he suffered an objectively "serious medical need" while incarcerated and (ii) that prison officials deliberately denied or delayed medical care with actual subjective knowledge of the prisoner's serious need.  See Kosilek v. Spencer, 774 F.3d 63, 83 (1st Cir. 2014) (citations omitted).  Here, Carter cannot satisfy either the objective or the subjective element of the test.

"A serious medical need is one that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  Miranda-Rivera v. Toledo-Davila, 813 F.3d 64, 74 (1st Cir. 2016) (citations, internal quotation marks omitted).  A medical need may be serious with respect either to current health problems or to a significant risk of future harm.  See Kosilek, 774 F.3d at 85-86.  A medical need is serious, moreover, if failure to treat it would result in the "wanton infliction of pain."  Estelle, 429 U.S. at 104 (citation omitted).

Carter testifies that the presence of the object in his eye did not place him at any "risk of serious harm."  Doc. no. 47-2 at 24:17-20.  He further testifies that the object did not cause him to experience pain, but rather "irritation and discomfort."  Id. at 24:17-20, 33:20-24.  And although he also testifies, somewhat to the contrary, that "there was pain that would happen once in a while," his testimony clearly indicates that his primary symptom "was more irritation than it was pain."  Id. at 79:20-22.  Construing Carter's testimony in the light most favorable to him, his medical condition falls well short of constituting a "serious medical need" for Eighth Amendment purposes.  No physician ever diagnosed Carter with a condition mandating treatment, and the irritating sensation of having an

7

object stuck in the eye is not so patently serious that it would be obvious to a layman that a doctor's attention was required. Carter's condition did not result in serious lasting harm or in any lingering consequence that Carter deems sufficiently significant to underlie his claim.  Finally, although Carter testifies to discomfort resulting from his condition, his testimony is clear that he did not experience pain so severe, debilitating, or protracted as to reach constitutional proportions.  In short, the record evidence does not support the conclusion that Carter suffered from an objectively serious medical need.  See, e.g., Boardley v. Fist Corr. Med., Case No. 03-343-KAJ, 2004 WL 2980727 at *2 (D. Del. Dec. 21, 2004) (infected ingrown toenails causing severe discomfort not a serious medical need).

   The record evidence similarly prevents Carter from establishing defendants' deliberate indifference.  To establish subjective deliberate indifference, the evidence must demonstrate that a defendant intentionally or purposefully denied or delayed medical treatment, notwithstanding the defendant's actual knowledge of the serious need for care.  See Farmer v. Brennan, 511 U.S. 825, 837 (1994); Perry v. Roy, 782 F.3d 73, 79 (1st Cir. 2015).  Evidence that a defendant negligently or inadvertently provided substandard care, or denied necessary care due to good faith error, is insufficient

to establish deliberate indifference.  See Ruiz-Rosa v. Rullan, 485 F.3d 150, 156 (1st Cir. 2007).  Moreover, delay of treatment does not amount to deliberate indifference for Eighth Amendment purposes except where the delay causes actual harm.  See Estelle, 429 U.S. at 106.

    Carter does not testify that defendants intended to cause him to suffer, and he concedes the possibility that defendants did not subjectively believe he suffered from a serious medical condition.  Doc. no. 47-2 at 41:4-23, 59:9-13.  He testifies that defendants attempted, albeit unsuccessfully, to treat his reported symptoms with eyedrops,[7] and that he underwent numerous eye examinations while he was incarcerated at NCF, none of which was successful in detecting any foreign object in his eye.  Carter's testimony thus establishes that defendants attempted to treat his condition while providing no grounds for concluding that defendants had actual knowledge of a serious medical need underlying Carter's symptoms.  At most, Carter's testimony supports the conclusion that defendants lacked compassion for Carter's discomfort.  This is insufficient to establish that defendants purposefully withheld medical care with actual awareness that failure to provide treatment would cause Carter

---

    [7] Although the eyedrops were ineffective in relieving Carter's symptoms, there is no evidence of record to suggest that eyedrops were a medically inappropriate course of treatment.

to suffer harm.  See, e.g., Leavitt v. Corr. Med. Servs., Inc., 645 F.3d 484, 503 (1st Cir. 2011) (absent evidence of bad faith, obduracy, or wantonness, provision of ineffective treatment does not amount to deliberate indifference).

Carter's pro se status and failure to support his objection to defendants' motion with evidence do not constitute grounds for disturbing the analysis above.  "A pro se litigant, like any litigant, is guaranteed a meaningful opportunity to be heard." Eagle Eye Fishing Corp. v. U.S. Dep't of Commerce, 20 F.3d 503, 506 (1st Cir. 1994) (citing Logan v. Zimmerman Brush Co., 455 U.S. 422, 437 (1982)).  "However, pro se status does not insulate a party from complying with procedural and substantive law."  Ahmed v. Rosenblatt, 118 F.3d 886, 890 (1st Cir. 1997). The purpose motivating liberal construction of a pro se party's pleadings is to avoid outcomes in which the court fails properly to consider the merits of a claim or defense simply because it was imperfectly pled or presented.  See id.  Here, however, nothing in Carter's briefing suggests that he has either a viable argument or any evidence to counter defendants' motion.

It follows that defendants are entitled to summary judgment as a matter of law as to Carter's Eighth Amendment claim.

**CONCLUSION**

For the reasons discussed above, defendants' motion for summary judgment (doc. no. 47) is granted. All pending motions are denied as moot. The clerk's office is directed to enter judgment and close the case.

SO ORDERED.

_____
Landya McCafferty
United States District Judge

August 10, 2020

cc: Carl L. Carter, Jr., pro se
 Francis Charles Fredericks, Esq.
 Anthony Galdieri, Esq.
 Jennifer Ramsey, Esq.
 Lawrence A. Vogelman, Esq.